Philip R. Hoffman, Esq.
Brad D. Rose, Esq.
Pryor Cashman LLP
Attorneys for Plaintiff
410 Park Avenue
New York, New York 10022
(212) 421-4100

## 08 CV 3489

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

GTFM, INC.,                                      :

                Plaintiff,               :               08 Civ.

       - against -                            :               **COMPLAINT**

THE WET SEAL, INC.,                     :

                Defendant.              :

------------------------------------------------------------------x

      Plaintiff GTFM, Inc. ("FUBU"), by its attorneys, Pryor Cashman LLP, as and for its

Complaint against defendant The Wet Seal, Inc. ("Wet Seal"), alleges as follows:

### NATURE OF THE ACTION

      1.     In this action, FUBU seeks injunctive relief, damages and related relief based

upon Wet Seal's blatant and willful violation of:

           a.     The Permanent Injunction and Final Judgment on Consent entered by this

Court on January 23, 2003 in GTFM, Inc. v. The Wet Seal, Inc. and RAD Clothing Com-

pany, Inc., S.D.N.Y., 02 Civ. 1265 (AKH) (hereafter the "Permanent Injunction") which

prohibited Wet Seal from violating FUBU's famous "05" trademarks (hereafter the "05

Trademarks" [A copy of the Permanent Injunction, which attaches FUBU's trademark

registrations as exhibits, is annexed hereto as Exhibit A];

b.      The Settlement Agreement entered into by FUBU, Wet Seal and RAD Clothing Company ("RAD") on or about December 20, 2002 ("Settlement Agreement") pursuant to which, inter alia, Wet Seal agreed to cease and desist from any further violation of FUBU's 05 Trademarks and to pay damages of at least $113,929.60 and $20 for each piece of infringing merchandise sold by it should it ever violate the Settlement Agreement, which it has by the actions alleged herein [A copy of the Settlement Agreement is annexed hereto as Exhibit B]; and

c.      FUBU's 05 Trademarks and other rights by Wet Seal's acts of trademark counterfeiting, trademark infringement, false designation of origin, dilution, unfair competition, injury to business reputation and false and deceptive business practices in violation of the laws of the United States and the State of New York.

## THE PARTIES

2.      Plaintiff FUBU is a corporation duly organized and existing under the laws of the State of New York and doing business at 350 Fifth Avenue, New York, New York 10118. FUBU is the owner of the registered trademarks at issue in this action.

3.      Upon information and belief, defendant Wet Seal is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 26972 Burbank, Foothill Ranch, California 92610, and doing business in the State of New York and in this District.

## JURISDICTION AND VENUE

4.      The action arises under the Lanham Trademark Act, 15 U.S.C. §1501 et seq. (the "Lanham Act"), New York General Business Law §§ 349 and 360-l, and the common law of the State of New York.  This Court has jurisdiction pursuant to 28 U.S.C §§ 1331, 1332, 1338 and

1367, and 15 U.S.C. §1121.  The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.  In addition, ¶2 of the Permanent Injunction provides that "[t]his Court retains jurisdiction of this action for the purpose of enforcing the provisions of this Permanent Injunction and Final Judgment on Consent by way of contempt or otherwise."

5.    The venue of this action is properly laid in this District pursuant to 28 U.S.C. §1391(b) and (c), and §1400(a), as well as ¶9 of the Settlement Agreement which provides that: (a) "Any suit for breach of this Settlement Agreement or Permanent Injunction shall be brought in the United States District Court for the Southern District of New York;" and (b) FUBU and Wet Seal "waive any objection which either party might have now or hereafter to the venue of any such suit and irrevocably submit to the jurisdiction of such Court in any such suit and hereby waive any claim or defense of inconvenient forum."

6.    The Settlement Agreement further provides that "[t]he party initiating such suit may seek referral of same to the Hon. Alvin K. Hellerstein as a related case to the Action, and the other party shall not contest such referral."

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### FUBU's Famous 05 Trademarks

7.    FUBU, by and through its licensees, is engaged in the manufacture, distribution and sale in interstate commerce of high quality merchandise, including men's, women's and children's apparel and accessories, that is sold through the United States in high quality retail stores.

8.    Since 1992, FUBU products have been widely advertised, offered for sale and sold throughout the United States under various distinctive trademarks.  Such trademarks include

the 05 Trademarks, i.e., "05" and "FUBU 05," which have been used by FUBU since 1996. The 05 Trademarks have at all times been owned exclusively by FUBU.

9.    Daymond John, a co-founder of the FUBU brand, conceived of the 05 (pronounced "oh-five") Trademarks for use on sportswear such as, for example, jerseys. He chose the number "5" to represent the number of founders of the FUBU brand and put the "0" in front to distinguish it from athletic uniforms, which rarely feature a zero before a single digit number. Although the 05 merchandise was initially solely marketed in tandem with the FUBU brand name, it did not take long for celebrities to don this attire and for customers to request "05 merchandise" when shopping for apparel. Eventually, the sub-brand took on a life of its own.

10.    As a result of FUBU's exclusive and extensive use of the 05 Trademarks, those marks have acquired enormous value and recognition in the United States and throughout the world. The 05 Trademarks are well known to the consuming public and trade as identifying and distinguishing FUBU exclusively and uniquely as the source of origin of the high quality products to which the 05 Trademarks are applied. The 05 Trademarks are both distinctive and famous.

11.    On December 26, 2000, the 05 Trademark and FUBU 05 Trademarks were entered on the Principal Register of the United States Patent and Trademark Office as Registered Trademark Nos. 2,415,190 and 2,415,191, respectively. True copies of the certificates of registration for the 05 Trademarks are annexed to the Permanent Injunction as Exhibit B. The registrations of the 05 Trademarks are valid, subsisting and in full force and effect.

12.    Since its inception in the 1990s, FUBU has: (a) made extensive, international use in commerce of the 05 Trademarks; (b) expended considerable sums each year in advertising, marketing and promoting the 05 Trademarks and the goods associated therewith; and (c) receiv-

ed worldwide publicity with respect to its business operations, brand name and the 05 Trademarks. Used in connection with the distinctive, cutting edge designs FUBU employs on its apparel, the 05 Trademarks continue to be among the most highly regarded and recognizable marks.

13.     FUBU has achieved significant goodwill and a prominent position in the fashion industry which is, in part, attributable to the high quality of its products sold under its 05 Trademarks. Apparel bearing the 05 Trademarks has sold and continues to sell nationally through retail stores, including department stores and individual retailers. As a result of FUBU's efforts, the 05 Trademarks have an incredibly strong media presence, received unsolicited media attention and, inter alia, have been featured in numerous magazines with national distribution, including *DNR, FHM, GQ, Rolling Stone, VIBE, Maxim* and *Teen People*.

14.     Due to FUBU's exacting standards, vigorous promotion of and the publicity generated for its 05 Trademarks, the apparel offered by FUBU under the 05 Trademarks has come to symbolize quality and cutting-edge fashion in the eyes of the consuming public.

15.     FUBU vigorously protects its 05 Trademarks in order to thwart any potential loss of the distinctiveness of those marks and to prevent confusion in the marketplace between, on the one hand, FUBU's 05 Trademarks and genuine FUBU products, and, on the other hand, the marks and products of unaffiliated third parties.

16.     As a result of FUBU's:  (a) exacting quality standards; (b) significant sales (both domestic and foreign); (c) vigorous promotion, advertising and enforcement of its rights in connection with apparel bearing the 05 Trademarks; (d) the international renown and the publicity generated for the 05 Trademarks by the celebrities who prominently wear FUBU's apparel bearing such marks, FUBU's apparel and the 05 Trademarks have come to symbolize quality in the

eyes of the consuming public and have attained enormous goodwill throughout the United States, New York State and this District. The 05 Trademarks have achieved secondary meaning associating them with FUBU in the mind of the purchasing public.

17.    In <u>GTFM, Inc. and GTFM, LLC v. Solid Clothing Inc.</u>, 215 F. Supp. 2d 273, 294 (S.D.N.Y. 2002), this Court recognized and upheld FUBU's rights in and to its 05 Trademarks, finding that FUBU "has shown that its '05' mark has acquired distinctiveness."

18.    FUBU 05 Trademarks have been continually used in commerce since their respective dates of first use and are incontestable. Pursuant to ¶3 of the Settlement Agreement, Wet Seal and RAD "acknowledge the validity of the Trademarks [including the 05 Trademarks] and agree not to contest the validity of such trademarks or FUBU's ownership rights therein, in any future proceedings between the parties, whether such proceedings constitute an action for breach of this Settlement Agreement, or a claim of infringement of any of the Trademarks."

**Wet Seal's Previous and Admitted Violations of FUBU's Rights**
**In 2001 and 2002 Lead To The Entry Of A Permanent Injunction**

19.    This is not the first litigation FUBU has had to commence against Wet Seal for violation of FUBU's 05 Trademarks. As acknowledged by Wet Seal in the Settlement Agreement, "on February 15, 2002, an action was instituted in the United States District Court, Southern District of New York, entitled <u>GTFM, Inc. v. The Wet Seal, Inc. and RAD Clothing Company, Inc.</u>, which has been designated 02 CV 1265 (AKH) (the 'Action') seeking injunctive relief and damages for acts of trademark infringement, trademark counterfeiting, false designation of origin, federal trademark dilution, common law trademark infringement, and common law unfair competition and unfair trade practices, arising out of Defendants' design, manufacture, purchase, distribution, advertisement, offer of sale and sale of shirts bearing unauthorized

reproductions, counterfeits, copies and/or colorable imitations of the Trademarks (the 'Articles')." As set forth in the Settlement Agreement, the Trademarks infringed by Wet Seal (and encompassed by the collective term "Trademarks") were "Trademark Registration No. 2,415,191 for the FUBU 05 Trademark; and Trademark Registration No. 2,415,190 for the 05 Trademark," i.e., the 05 Trademarks at issue in this litigation.

20.    The 2002 litigation was resolved by, inter alia, the entry of the Permanent Injunction and Final Judgment on Consent [Exhibit A hereto] which began by reciting that FUBU had sued Wet Seal and RAD for:

> trademark infringement, trademark counterfeiting, false designation of origin, federal trademark dilution, common law trademark infringement, common law unfair competition and unfair trade practices relating to Defendants' unauthorized use of trademarks federally registered by FUBU, said claims have arisen, in particular, out of Defendants' use, on or in connection with the design, manufacture, purchase, distribution, offer for sale and/or sale of shirts bearing unauthorized reproductions, counterfeits, copies and/or colorable imitations of such FUBU trademarks (the "Articles"), photographs of examples of such goods being annexed as Exhibit A.

21.    Pursuant to ¶1 of the Permanent Injunction, Wet Seal and RAD, "their affiliates, divisions, and subsidiaries, as well as their respective principals, officers, agents, servants, employees and all others acting in direct and/or indirect concert or participation with them," were "PERMANENTLY ENJOINED and RESTRAINED from," inter alia:

> the import, export, manufacture, distribution, purchase, circulation, offer for sale, sale, advertisement, promotion, marketing or display of any goods on or in connection with any unauthorized reproductions, counterfeits, copies and/or colorable imitations of the following FUBU trademarks: ... Trademark Registration No. 2,415,191 for the FUBU 05 Trademark; and Trademark Registration No. 2,415,190 for the 05 Trademark (collectively the "FUBU Trademarks") or marks confusingly similar thereto, either individually or in conjunction with other words, marks or designs.  Copies of these registrations are annexed as Exhibit B.

22.     Pursuant to ¶2 of the Permanent Injunction, "[t]his Court retains jurisdiction of this action for the purpose of enforcing the provisions of this Permanent Injunction and Final Judgment on Consent by way of contempt or otherwise.  Defendants agree not to contest the validity of the FUBU Trademarks in any such proceeding."

**The Settlement Agreement Entered Into By FUBU and Wet Seal In 2002**

23.     The entry of the Permanent Injunction was one of the requirements (at ¶6) of the Settlement Agreement entered into on or about December 20, 2002 between FUBU, Wet Seal and RAD, as was the payment of certain damages (¶1) and "Cessation of Use of Marks" as provided for in ¶2 of the Settlement Agreement as follows:

> Defendants, their principals, directors, officers, employees, agents, affiliates, divisions and subsidiaries agree that they shall immediately cease and desist from the design, manufacture, purchase, distribution, offer for sale, sale, advertisement, promotion, marketing, export, import, commercial exploitation or otherwise trafficking in the Articles or any other products bearing any unauthorized reproductions, counterfeits, copies and/or colorable imitations of the Trademarks thereof or any marks confusingly similar thereto, either individually or in conjunction with other words, marks or designs.

24.     Pursuant to ¶3 of the Settlement Agreement, entitled "Validity of the Trademarks," Wet Seal and RAD "acknowledge the validity of the Trademarks and agree not to contest the validity of such trademarks or FUBU's ownership rights therein, in any future proceedings between the parties, whether such proceedings constitute an action for breach of this Settlement Agreement, or a claim of infringement of any of the Trademarks."

25.     The Settlement Agreement (¶8) specifically provided that FUBU was entering into it and that the release being granted to Wet Seal and RAD pursuant thereto was "expressly contingent upon ... Defendants' full and complete compliance with the terms and conditions of this Settlement Agreement."

26.    Pursuant to ¶8 of the Settlement Agreement, Wet Seal expressly agreed that should it "fail to comply with the terms and conditions of this Settlement Agreement," it would pay to FUBU the amount of "$113,929.60 (representing three times the profits realized on its sale of the Represented Quantity ($129,729.60) less its portion of the monies paid to FUBU pursuant to Paragraph 1 of this Agreement or $15,800)." Wet Seal acknowledged that the $113,929.60 amount reflected its "actual exposure to damages, which is far greater than the amounts being paid pursuant to Paragraph 1."

27.    Wet Seal further agreed pursuant to ¶¶ 8 and 9 of the Settlement Agreement to "make an additional payment to FUBU of $20 per unit for any goods in addition to or in excess of the Represented Quantity which bears an unauthorized reproduction, counterfeit, copy and/or colorable imitation of the Trademarks as well as all attorneys fees expended in proving such breaching act(s). If, in the future, an action is commenced regarding a breach of this Settlement Agreement and a court of competent jurisdiction determines the amount of [Wet Seal's] profits, FUBU's lost profits or reasonable royalty should be greater than $20.00 per unit, [Wet Seal] shall pay the greater amount as determined by the court."

**Wet Seal's Willful Violation Of The Permanent Injunction and**
**Settlement Agreement and Infringement of FUBU's 05 Trademarks**

28.    Notwithstanding FUBU's unequivocal rights in and to the 05 Trademarks and in direct violation of the terms of the Permanent Injunction and Settlement Agreement, Wet Seal is knowingly and willfully, and without any authorization from FUBU, selling, distributing, manu-facturing, importing, displaying, advertising, marketing and/or promoting apparel bearing infrin-ging reproductions of the 05 Trademarks in interstate and intrastate commerce, including com-merce in New York State and this District. Photocopies of examples of such apparel sold by Wet

Seal bearing the 05 Trademarks (hereafter the "Infringing Merchandise") are attached hereto as Exhibit C.

29.    Wet Seal is selling Infringing Merchandise which is the same as or is closely related to merchandise sold by FUBU and is using a reproduction of the 05 Trademarks which is deceptively and confusingly similar to FUBU's authentic 05 Trademarks, thus misleading consumers by giving the impression that the Infringing Merchandise is genuine FUBU merchandise when, in fact, it is not and does not meet FUBU's exacting quality standards.

30.    Upon information and belief, the Infringing Merchandise sold by Wet Seal that bears confusingly similar imitations of 05 Trademarks is calculated to deceive the purchasing public into believing that the Infringing Merchandise is manufactured, sold, authorized by or affiliated with FUBU.

31.    On October 19, 2007, counsel for FUBU sent a letter to Wet Seal objecting to Wet Seal's violation of the Permanent Injunction and Settlement Agreement and demanding that Wet Seal immediately cease and desist from any further infringement of FUBU's 05 Trademarks and pay to FUBU the amounts provided for in ¶8 of the Settlement Agreement for any breach thereof by Wet Seal, i.e., $113,929.60 plus at least $20 per unit for each unit of new Infringing Merchandise sold by Wet Seal. Counsel for FUBU also demanded that Wet Seal immediately:

(i)    Provide GTFM with a complete report setting forth all of the Infringing Merchandise that was purchased by or on behalf of TWS [i.e., Wet Seal], including the date of TWS's purchase; the quantity of each style purchased; unit price per item purchased; dates of purchase; copies of all purchase orders reflecting such purchases; and sources/suppliers through which such apparel items were purchased.

(ii)    Provide GTFM with a complete report setting forth each and every sale of merchandise bearing the Mark made by TWS to consumers including the date and location of each sale; the quantity of said merchandise sold; and the sale price of each item.

(iii)    Account to GTFM for TWS's profits derived from sale of the Infringing Merchandise.

(iv)    Provide GTFM with a list of the names, addresses, telephone numbers and/or contacts of all of TWS's sources/suppliers/manufacturers/designers/distributors of the Infringing Merchandise.

(v)    Provide GTFM with all advertisements and promotional materials bearing, displaying or concerning the Infringing Merchandise.

(vi)    Immediately cease and desist from selling or distributing any additional inventory of the Infringing Merchandise.

(vii)    Immediately deliver to GTFM, at TWS's own cost and expense, all remaining inventory, advertisements, sketches, samples, designs or other materials relating to the distribution, sale, importation, design or manufacturer of the Infringing Merchandise.

32.    On or about November 9, 2007, Wet Seal's counsel responded to the letter from FUBU's counsel. With the exception of an unsubstantiated representation that Wet Seal had stopped selling the Infringing Merchandise, Wet Seal refused to comply with any of the demands made by counsel for FUBU, including the demands for payment of damages and for documents and information relating to its sales of the Infringing Merchandise. Instead, and in further violation of the Permanent Injunction and Settlement Agreement, Wet Seal's counsel contested the validity of FUBU's 05 Trademarks.

### FIRST CLAIM FOR RELIEF
**(Breach of Settlement Agreement)**

33.    FUBU repeats and realleges the allegations contained in paragraphs 1 through 32 as if fully set forth herein.

34.    Pursuant to ¶¶ 2 and 6 of the Settlement Agreement and the Permanent Injunction entered in accordance therewith, Wet Seal agreed to "immediately cease and desist from the de-

sign, manufacture, purchase, distribution, offer for sale, sale, advertisement, promotion, market-

ing, export, import, commercial exploitation or otherwise trafficking in ... any ... products bear-

ing any unauthorized reproductions, counterfeits, copies and/or colorable imitations of the Trade-

marks [including the 05 Trademarks] thereof or any marks confusingly thereto, either individu-

ally or in conjunction with other words, marks or designs."

35.     Wet Seal has violated the Settlement Agreement and Permanent Injunction by its

design, manufacture, purchase, distribution, offer for sale, sale, advertisement, promotion, mar-

keting, export, import, commercial exploitation and/or otherwise trafficking in the Infringing

Merchandise bearing the 05 Trademarks.

36.     As a result of its failure to comply with the terms and conditions of the Settlement

Agreement, Wet Seal, pursuant to ¶¶ 8 and 9 thereof, is obligated to pay to FUBU the sum of:

(a) "$113,929.60; (b) a minimum of $20 for each unit of Infringing Merchandise sold by Wet

Seal; and (c) FUBU's costs and reasonable attorney's fees in connection with this litigation.

## SECOND CLAIM FOR RELIEF
### (Trademark Counterfeiting Under 15 U.S.C. §1117(b))

37.     FUBU repeats and realleges the allegations contained in paragraphs 1 through 36

as if fully set forth herein.

38.     Wet Seal's unauthorized use of the 05 Trademarks constitutes the use of counter-

feits of federally registered trademarks and will confuse and deceive customers into believing

that Wet Seal and its inferior, counterfeit apparel are associated with and/or authorized by

FUBU.

39.     Wet Seal's actions and conduct, which are in direct contravention of the Perman-

ent Injunction, are likely to cause confusion or mistake and/or to deceive others into erroneously

believing that the apparel being sold by Wet Seal is authorized by, licensed by, sponsored by, endorsed by or otherwise associated with FUBU.

40.    FUBU has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Wet Seal in an amount not yet determined or ascertainable but, upon information and belief, in excess of $1,000,000.

41.    Upon information and belief, Wet Seal has obtained gains, profits and advantages as a result of its wrongful acts in an amount not yet determined or ascertainable, but, upon information and belief, in excess of $1,000,000.

## THIRD CLAIM FOR RELIEF
### (Trademark Infringement Under 15 U.S.C. §1117(b))

42.    FUBU repeats and realleges the allegations contained in paragraphs 1 through 41 as if fully set forth herein.

43.    Wet Seal's actions and conduct constitute willful and deliberate infringement of FUBU's 05 Trademarks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

44.    FUBU has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Wet Seal in an amount not yet determined or ascertainable but, upon information and belief, in excess of $1,000,000.

45.    Upon information and belief, Wet Seal has obtained gains, profits and advantages as a result of its wrongful acts in an amount not yet determined or ascertainable, but, upon information and belief, in excess of $1,000,000.

## FOURTH CLAIM FOR RELIEF
### (Unfair Competition and False Designation of Origin Under 15 U.S.C. §1125(a))

46.    FUBU repeats and realleges the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

47.    FUBU owns all right, title and interest in and to, and holds the exclusive rights to market and sell apparel bearing the 05 Trademarks.

48.    The 05 Trademarks have achieved secondary meaning associating them in the mind of the purchasing public with FUBU and its apparel.

49.    Wet Seal's conduct as alleged herein, including its use of the 05 Trademarks, constitutes a false designation of origin as such conduct has caused and is likely to cause confusion or to deceive consumers as to the origin, sponsorship, affiliation, connection and/or association of FUBU, its apparel and/or its 05 Trademarks, with Wet Seal and its Infringing Merchandise.

50.    The Infringing Merchandise is calculated and intended to deceive and is likely to deceive consumers into believing that they are purchase FUBU's products. The Infringing Merchandise does not originate from or have the approval or authorization of FUBU.

51.    The foregoing acts of Wet Seal constitute unfair competition in violation of §43(a) of the Lanham Act, 15 U.S.C. §1125(a).

52.    FUBU has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Wet Seal in an amount not yet determined or ascertainable but, upon information and belief, in excess of $1,000,000.

53.    Upon information and belief, Wet Seal has obtained gains, profits and advantages as a result of its wrongful acts in an amount not yet determined or ascertainable, but, upon information and belief, in excess of $1,000,000.

## FIFTH CLAIM FOR RELIEF
### (Trademark Dilution Under 15 U.S.C. §1125 (c))

54.    FUBU repeats and realleges the allegations contained in paragraphs 1 through 53 as if fully set forth herein.

55.    FUBU's 05 Trademarks are famous marks within the meaning of 15 U.S.C. §1125(c)(1) and have been famous marks prior to Wet Seal's conduct complained of herein.

56.    FUBU's 05 Trademarks are famous marks by virtue of, inter alia: (a) their substantial inherent and acquired distinctiveness; (b) FUBU's extensive use, advertising and promotion of the 05 Trademarks, which has resulted in strong and widespread recognition of the 05 Trademarks; and (c) the registration of the 05 Trademarks on the Principal Trademark Register of the United States Patent and Trademark Office.

57.    Wet Seal's use of the 05 Trademarks on and in connection with the sale and distribution of the Infringing Merchandise dilutes the strength and distinctive quality of FUBU's famous 05 Trademarks and lessens the capacity of the 05 Trademarks to identify and distinguish FUBU's products.

58.    The acts and conduct complained of herein constitute willful and deliberate dilution of FUBU's 05 Trademarks and constitute a violation of the federal anti-dilution statute, Lanham Act §43(c), 15 U.S.C. §1125(c).

59.    FUBU has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Wet Seal in an amount not yet determined or ascertainable but, upon information and belief, in excess of $1,000,000.

60.    Upon information and belief, Wet Seal has obtained gains, profits and advantages as a result of its wrongful acts in an amount not yet determined or ascertainable, but, upon information and belief, in excess of $1,000,000.

### SIXTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement and Unfair Competition)

61.    FUBU repeats and realleges the allegations contained in paragraphs 1 through 60 as if fully set forth herein.

62.    FUBU has expended substantial time, resources and effort to develop and obtain an excellent reputation and good will for itself, its products and its 05 Trademarks.

63.    Wet Seal has knowingly and willfully appropriated FUBU's 05 Trademarks in an effort to falsely create the impression that the Infringing Merchandise is sanctioned by FUBU and in order to arrogate unto itself all of the goodwill associated with the 05 Trademarks and FUBU.  Wet Seal's unlawful acts in appropriating rights in FUBU's 05 Trademarks were and are intended to capitalize on FUBU's goodwill for Wet Seal's own pecuniary gain.

64.    The Infringing Merchandise being sold by Wet Seal is calculated to and is likely to create confusion and to deceive and mislead consumers into believing that such merchandise originated with or is authorized by FUBU, and has caused and is likely to cause confusion as to the source of Wet Seal's Infringing Merchandise, all to the detriment of FUBU.

65.    Wet Seal's acts as alleged above constitute unfair competition and will, unless enjoined by this Court, result in the destruction and/or diversion of FUBU's goodwill in its 05 Trademarks and the unjust enrichment of Wet Seal.

66.    Upon information and belief, Wet Seal committed the acts alleged herein intentionally, deliberately, fraudulently, maliciously, willfully, wantonly and oppressively with the

intent to confuse the public and to injure FUBU in its business.

67.    FUBU has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Wet Seal in an amount not yet determined or ascertainable but, upon information and belief, in excess of $1,000,000.

68.    Upon information and belief, Wet Seal has obtained gains, profits and advantages as a result of its wrongful acts in an amount not yet determined or ascertainable, but, upon information and belief, in excess of $1,000,000.

## SEVENTH CLAIM FOR RELIEF
### (Violation of New York's Anti-Dilution Statute – N.Y. Gen. Bus. Law §360-l)

69.    FUBU repeats and realleges the allegations contained in paragraphs 1 through 68 as if fully set forth herein.

70.    FUBU's 05 Trademarks are distinctive marks and have become strong and famous in the State of New York by virtue of their substantial inherent and acquired distinctiveness, extensive use in the State of New York and the extensive advertising of and widespread publicity received by the marks in the State of New York.

71.    FUBU's 05 Trademarks, which Wet Seal has copied, have become a distinctive symbol of goodwill that has been engendered in FUBU's products and represents significant and valuable proprietary assets of FUBU.

72.    Wet Seal's unauthorized use of FUBU's 05 Trademarks will dilute, tarnish and blur the distinctive quality of FUBU's 05 Trademarks and cause injury to FUBU's business reputation

73.    The actions of Wet Seal complained of herein have already injured and are likely to continue to injure the business reputation and dilute the distinctive quality of FUBU's 05

Trademarks.

74.    The foregoing acts of Wet Seal constitute dilution in violation of §360-l of the New York General Business Law.

75    FUBU has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Wet Seal.

### EIGHTH CLAIM FOR RELIEF
**(Unlawful Deceptive Acts and Practices – N.Y. Gen. Bus. Law §349)**

76.    FUBU repeats and realleges the allegations contained in paragraphs 1 through 75 as if fully set forth herein.

77.    Wet Seal, without FUBU's authorization or consent, and having knowledge of FUBU's well-known and prior rights in and to the 05 Trademarks and the fact that Wet Seal's Infringing Merchandise is confusingly similar to the products that FUBU manufactures and sells and is famous for, has manufactured, advertised, distributed, offered for sale and/or sold Infringing Merchandise to the consuming public in direct competition with FUBU.

78.    Wet Seal's use of the 05 Trademarks is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of Wet Seal's Infringing Merchandise, and is likely to deceive the public into believing the Infringing Merchandise being sold by Wet Seal originates from, is associated with, or is otherwise authorized by FUBU.

79.    Wet Seal's deceptive acts and practices involve public sales activities of a recurring nature and constitute a violation of New York General Business Law §349.

80.     FUBU has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Wet Seal in an amount not yet determined or ascertainable but, upon information and belief, in excess of $1,000,000.

81.     Upon information and belief, Wet Seal has obtained gains, profits and advantages as a result of its wrongful acts in an amount not yet determined or ascertainable, but, upon information and belief, in excess of $1,000,000.

## PRAYER FOR RELIEF

WHEREFORE, FUBU demands judgment against Wet Seal as follows:

1.     Holding Wet Seal in contempt of the Permanent Injunction and ordering such relief as the Court may deem just and proper.

2.     Ordering that Wet Seal and its parents, subsidiaries, affiliated companies, officers, agents, directors, employees, shareholders and attorneys and all those persons in active concert or participation with it who receive actual notice of the injunction by personal service or otherwise, be permanently restrained and enjoined from:

a.     Further infringing FUBU's 05 Trademarks  and from importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any products, including apparel, not authorized by FUBU bearing any simulation, reproduction, counterfeit, copy or colorable imitation of FUBU's 05 Trademarks or any mark confusingly similar thereto;

b.     Using any simulation, reproduction, counterfeit, copy or colorable imitation of FUBU's 05 Trademarks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauth-

orized products, including apparel, in such fashion as to relate or connect, or tend to re-

late or connect, such products in any way to FUBU, or to any goods sold, manufactured,

sponsored or approved by or connected with FUBU;

   c.  Making any statement or representation whatsoever, or using any false

designation of origin or false description, or performing any act, which can or is likely to

lead the trade or public, or individual members thereof, to believe that any products,

including apparel, manufactured, distributed or sold by Wet Seal are in any manner

associated or connected with FUBU, or are sold, manufactured, licensed, sponsored,

approved or authorized by FUBU;

   d.  Using any false descriptions or representations or any false designations of

origin or from otherwise committing any acts of unfair competition with respect to FUBU

and its 05 Trademarks by using such marks or any mark confusingly similar thereto

without the authorization of FUBU;

   e.  Diluting the distinctiveness and goodwill established by FUBU in the 05

Trademarks by using these marks or any marks that are confusingly similar thereto; and

   f.  Engaging in any other activity constituting unfair competition with FUBU,

or constituting an infringement of any of FUBU's 05 Trademarks, or of FUBU's rights

in, or to use or to exploit, the 05 Trademarks, or constituting any dilution of FUBU's

name, reputation or goodwill.

  3.  Directing that Wet Seal deliver for destruction all Infringing Merchandise, goods,

products, signs, labels, brochures, advertising, promotional material, prints, packages, dyes,

wrappers, receptacles and advertisements in its possession or under its control bearing any of

FUBU's 05 Trademarks or any simulation, reproduction, counterfeit, copy of colorable imitation

thereof, and all plates, molds, matrices and other means of making the same.

4.    Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products, including apparel, manufactured, sold or otherwise circulated or promoted by Wet Seal is authorized by FUBU or related in any way to FUBU's products, including apparel.

5.    Directing that an accounting and judgment be rendered against Wet Seal for:

a.    Damages pursuant to ¶8 of the Settlement Agreement in the amount of $113,929.60 plus at least $20 per unit for each unit of Infringing Merchandise sold by Wet Seal;

b.    All profits received by Wet Seal and all damages sustained by FUBU on account of Wet Seal's sale of Infringing Merchandise and, furthermore, that such profits and damages as found herein be trebled as provided for by 15 U.S.C. §1117; and

c.    Pursuant to 15 U.S.C. §1117(c)(2), statutory damages of $1,000,000 for Wet Seal's willful violation of the Permanent Injunction and use of a counterfeit reproduction of FUBU's 05 Trademarks.

6.    Awarding FUBU its costs in this action together with reasonable attorney's fees and expenses as provided for by ¶9 of the Settlement Agreement and 15 U.S.C. §1117.

7.    Directing that the Court retain jurisdiction of this action for the purpose of enabling FUBU to apply to the Court at any time for such further orders and directions as may be necessary or appropriate for the interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith, and for the punishment of any violations thereof.

8.    Awarding to FUBU such other and further relief as the Court may deem just and

proper.

Dated:  New York, New York
          April 10, 2008

PRYOR CASHMAN LLP

By: _____
        Philip R. Hoffman
            phoffman@pryorcashman.com
        Brad D. Rose
            brose@pryorcashman.com
        Attorneys for Plaintiff
        410 Park Avenue
        New York, New York  10022
        (212) 421-4100

**COMPLAINT, EXHIBIT A**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

GTFM, INC.,                                          :        Civil Action No. 02 CV 1265 (AKH)

              Plaintiff,                    :        PERMANENT INJUNCTION AND
                                :        FINAL JUDGMENT ON CONSENT

        -against-                           :

THE WET SEAL, INC. and                               :
RAD CLOTHING COMPANY, INC.,                          :

              Defendants.                   :

------------------------------------------------------X

      WHEREAS,  plaintiff GTFM, Inc. ("FUBU") on February 15, 2002, having filed a

complaint against The Wet Seal, Inc. ("Wet Seal"), a Delaware corporation, having a principal

place of business at 26972 Burbank, Foothill Ranch, California 92610 and RAD Clothing

Company, Inc. ("RAD"),  a California corporation, having a principal place of business at 3011

E. Pico Boulevard, Los Angeles, California 90023 (hereinafter Wet Seal and RAD are

collectively referred to as "Defendants") and said complaint having asserted causes of action for

trademark infringement, trademark counterfeiting, false designation of origin, federal trademark

dilution, common law trademark infringement, common law unfair competition and unfair trade

practices relating to Defendants' unauthorized use of trademarks federally registered by FUBU,

said claims have arisen, in particular, out of Defendants' use, on or in connection with the design,

manufacture, purchase, distribution, offer for sale and/or sale of shirts bearing unauthorized

reproductions, counterfeits, copies and/or colorable imitations of such FUBU trademarks (the

"Articles"), photographs of examples of such goods being annexed as Exhibit A; and

WHEREAS, FUBU and Defendants have been afforded the opportunity to consult with, and having consulted with, attorneys of their own choice in connection with the execution of this Permanent Injunction and Final Judgment on Consent (the "Injunction"), and having relied upon the advice of such attorneys in executing this Permanent Injunction and Final Judgment on Consent, and having entered into a Settlement Agreement (the "Agreement") dated ~~December~~ January 22, 10 , 200~~3~~, providing, *inter alia*, for the entry of this Permanent Injunction and Final Judgment on Consent; and

WHEREAS, the Court has jurisdiction over the subject matter of this action and personal jurisdiction over Defendants, and venue in this action being proper in this judicial district;

IT IS HEREBY ORDERED, ~~ADJUDGED,~~ AND DECREED that:                    ACK

1.    Defendants, their affiliates, divisions, and subsidiaries, as well as their respective principals, officers, agents, servants, employees and all others acting in direct and/or indirect concert or participation with them, be and hereby are PERMANENTLY ENJOINED and RESTRAINED from:

(a)    the design, manufacture, purchase, distribution, offer for sale and sale of the Articles depicted in Exhibit A;

(b)    the import, export, manufacture, distribution, purchase, circulation, offer for sale, sale, advertisement, promotion, marketing or display of any goods on or in connection with any unauthorized reproductions, counterfeits, copies and/or colorable imitations of the following FUBU trademarks: Trademark Registration No. 1,910,169 for the F.U.B.U. Trademark; Trademark Registration Nos. 2,352,438 and 2,403,324 for the FUBU

Trademark; Trademark Registration No. 2,068,059 for the FUBU JEANS

(Stylized) Trademark; Trademark Registration No. 2,432,774 for the

FUBU SPORTS Trademark; Trademark Registration No. 2,068,058 for

the FUBU/Flag Design Trademark; Trademark Registration No. 2,065,987

for the fB/FUBU Trademark; Trademark Registration No. 2,415,191 for

the FUBU 05 Trademark; and Trademark Registration No. 2,415,190 for

the 05 Trademark (collectively the "FUBU Trademarks") or marks

confusingly similar thereto, either individually or in conjunction with other

words, marks or designs. Copies of these registrations are annexed as

Exhibit B.

2.    This Court retains jurisdiction of this action for the purpose of enforcing the provisions of

this Permanent Injunction and Final Judgment on Consent by way of contempt or

otherwise. Defendants agree not to contest the validity of the FUBU Trademarks in any

such proceeding.

3.    The parties waive appeal of this Permanent Injunction and Final Judgment on Consent.

4.    Each party to this Permanent Injunction and Final Judgment on Consent shall bear its

own costs and attorneys' fees of this action.

5.    This Permanent Injunction and Final Judgment on Consent shall operate as the final judgment in this action.

_____
GURSKY & EDERER, LLP
Martin J. Feinberg (MF4579)
Attorney(s) for GTFM, Inc.
1350 Broadway, 11th Floor
New York, New York 10018
(212) 904-1234

_____
STEINBERG & RASKIN, PC
Martin G. Raskin (MGR          )
Attorney(s) for The Wet Seal, Inc.
    and RAD Clothing Company, Inc.
1140 Avenue of the Americas, 15th Floor
New York, New York 10036
(212) 768-3800

LEWIS ANTEN, PC
Lewis Anten, Esq.
16830 Ventura Boulevard, Suite 411
Encino, California 91436
(818) 501-3535

Approved and entered by the Court:

_____
Hon. Alvin K. Hellerstein
United States District Judge

Date: 1/23/03

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON 1/30/03

**Permanent Injunction, Exhibit A**



**Permanent Injunction, Exhibit B**

Int. Cl.: 25

Prior U.S. Cl.: 39

Reg. No. 1,910,169

United States Patent and Trademark Office    Registered Aug. 8, 1995

## TRADEMARK
### PRINCIPAL REGISTER

# F.U.B.U.

J. ALEXANDER MARTIN (UNITED STATES CITIZEN)
102-20 FARMERS BLVD
HOLLIS, NY 11423

FOR: MEN'S, WOMEN'S AND CHILDREN'S CLOTHING, NAMELY SWEATSHIRTS, SHIRTS, JEANS, JACKETS, COATS, SWEAT-PANTS, SLACKS, SUITS, HATS, HEADBANDS, VISORS, CAPS, DRESSES, SHOES, SNEAKERS, BOOTS, WRISTBANDS, SOCKS, T-SHIRTS, BELTS, UNDERGARMENTS, NECKTIES, DRESS SHIRTS, COLLARED SHIRTS, RUGBY SHIRTS, KNIT SHIRTS, SHORTS AND SANDALS, IN CLASS 25 (U.S. CL. 39).

FIRST USE 1-1-1992; IN COMMERCE 1-1-1992.

SER. NO. 74-527,332, FILED 5-23-1994.

MARY ROSSMAN, EXAMINING ATTORNEY

Int. Cl.: 14

Prior U.S. Cls.: 2, 27, 28, and 50

Reg. No. 2,352,438

## United States Patent and Trademark Office

Registered May 23, 2000

## TRADEMARK
### PRINCIPAL REGISTER

## FUBU

GTFM, INC. (NEW YORK CORPORATION)
350 FIFTH AVENUE, SUITE 6617
NEW YORK, NY 10118

FOR: JEWELRY AND WATCHES, IN CLASS 14
(U.S. CLS. 2, 27, 28 AND 50).
FIRST USE 11–0–1999; IN COMMERCE 11–0–1999.

OWNER OF U.S. REG. NOS. 1,910,169, 2,069,058,
AND OTHERS.

SN 75–416,448, FILED 1–12–1998.

ANDREW BENZMILLER, EXAMINING ATTORNEY

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

United States Patent and Trademark Office

Reg. No. 2,403,324
Registered Nov. 14, 2000

## TRADEMARK
### PRINCIPAL REGISTER

## FUBU

GTFM, INC. (NEW YORK CORPORATION)
350 FIFTH AVENUE
SUITE 6617
NEW YORK, NY 10118

FOR: CLOTHING, NAMELY SHIRTS, VESTS, SWEATERS, SHOES, CAPS, BANDANNAS, SHORTS, SWEAT SHIRTS, PANTS, BELTS FOR CLOTHING, SOCKS, SWIMWEAR, JACKETS, RAINWEAR, BLOUSES, DRESSES, FOOTWEAR, HOSIERY,

SCARVES, HATS, HEAD BANDS, PAJAMAS AND SLEEPWEAR, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 9-0-1992; IN COMMERCE 9-0-1992.

OWNER OF U.S. REG. NOS. 1,910,169, 2,069,058 AND OTHERS.

SER. NO. 75-600,277, FILED 12-7-1998.

MICHAEL ENGEL, EXAMINING ATTORNEY

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

United States Patent and Trademark Office

Reg. No. 2,068,059
Registered June 3, 1997

## TRADEMARK
## PRINCIPAL REGISTER



GTFM, INC. (NEW YORK CORPORATION)
350 FIFTH AVENUE, SUITE 4820
NEW YORK, NY 10118

FOR: MEN'S, WOMEN'S AND CHILDREN'S CLOTHING, NAMELY, SWEATSHIRTS, SHIRTS, JEANS, JACKETS, COATS, SWEAT-PANTS, SLACKS, SUITS, HATS, HEADBANDS, VISORS, CAPS, DRESSES, SHOES, SNEAKERS, BOOTS, WRISTBANDS, SOCKS, T-SHIRTS, BELTS, UNDERGARMENTS, NECKTIES, DRESS SHIRTS, COLLARED SHIRTS, RUGBY SHIRTS, KNIT SHIRTS, SHORTS AND SANDALS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 9-0-1994; IN COMMERCE 9-0-1994.

OWNER OF U.S. REG. NO. 1,910,169.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "JEANS", APART FROM THE MARK AS SHOWN.

SN 75-087,057, FILED 4-4-1996.

AMOS T. MATTHEWS, JR., EXAMINING AT-TORNEY

.: 25

U.S. Cls.: 22 and 39

Reg. No. 2,432,774

ed States Patent and Trademark Office

Registered Mar. 6, 2001

## TRADEMARK
### PRINCIPAL REGISTER

## FUBU SPORTS

M, INC. (NEW YORK CORPORATION)
FTH AVENUE
.6617
YORK, NY 10118

R: MEN'S, WOMEN'S AND CHILDREN'S
HING, NAMELY SWEATSHIRTS, SHIRTS,
S, JACKETS, COATS, SWEAT PANTS, SLACKS,
, HATS, HEADBANDS, VISORS, CAPS, DRES-
SHOES, SNEAKERS, BOOTS, WRISTBANDS,
S, T-SHIRTS, BELTS, UNDERGARMENTS,
CTIES, DRESS SHIRTS, COLLARED SHIRTS,
BY SHIRTS, KNIT SHIRTS, SHORTS, AND
DALS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 1-1-1992; IN COMMERCE 1-1-1992.

OWNER OF U.S. REG. NOS. 1,910,169, 2,068,058
AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "SPORTS", APART FROM THE
MARK AS SHOWN.

SER. NO. 75-648,156, FILED 2-24-1999.

MICHAEL ENGEL, EXAMINING ATTORNEY

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

## United States Patent and Trademark Office

Reg. No. 2,068,058

Registered June 3, 1997

## TRADEMARK
### PRINCIPAL REGISTER



GTFM, INC. (NEW YORK CORPORATION)
350 FIFTH AVENUE, SUITE 4820
NEW YORK, NY 10118

FOR: MEN'S, WOMEN'S AND CHILDREN'S CLOTHING, NAMELY, SWEATSHIRTS, SHIRTS, JEANS, JACKETS, COATS, SWEAT-PANTS, SLACKS, SUITS, HATS, HEADBANDS, VISORS, CAPS, DRESSES, SHOES, SNEAKERS, BOOTS, WRISTBANDS, SOCKS, T-SHIRTS, BELTS, UNDERGARMENTS, NECKTIES,

DRESS SHIRTS, COLLARED SHIRTS, RUGBY SHIRTS, KNIT SHIRTS, SHORTS AND SAN-DALS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 9-0-1992; IN COMMERCE 9-0-1992.

OWNER OF U.S. REG. NO. 1,910,169.

SN 75-087,056, FILED 4-4-1996.

AMOS T. MATTHEWS, JR., EXAMINING AT-TORNEY

57

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

United States Patent and Trademark Office

Reg. No. 2,065,987

Registered May 27, 1997

## TRADEMARK
## PRINCIPAL REGISTER



GTFM, INC. (NEW YORK CORPORATION)
350 FIFTH AVENUE, SUITE 4820
NEW YORK, NY 10118.

FOR: MEN'S, WOMEN'S AND CHILDREN'S CLOTHING, NAMELY, SWEATSHIRTS, SHIRTS, JEANS, JACKETS, COATS, SWEATPANTS, SLACKS, SUITS, HATS, HEADBANDS, VISORS, CAPS, DRESSES, SHOES, SNEAKERS, BOOTS, WRISTBANDS, SOCKS, T-SHIRTS, BELTS, UNDERGARMENTS, NECKTIES,

DRESS SHIRTS, COLLARED SHIRTS, RUGBY SHIRTS, KNIT SHIRTS, SHORTS AND SANDALS, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 9-0-1992; IN COMMERCE 9-0-1992.

OWNER OF U.S. REG. NO. 1,910,169.

SN 75-087,058, FILED 4-4-1996.

AMOS T. MATTHEWS, JR., EXAMINING ATTORNEY

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39                                Reg. No. 2,415,191

United States Patent and Trademark Office          Registered Dec. 26, 2000

Amended                                                  OG Date Nov. 13, 2001

TRADEMARK
PRINCIPAL REGISTER

FUBU 05

GTFM, INC. (NEW YORK CORPORA-
TION)
350 FIFTH AVENUE
SUITE 6617
NEW YORK, NY 10118
    OWNER OF U.S. REG. NOS. 1,910,169,
2,068,058 AND OTHERS.

    FOR: CLOTHING, NAMELY, ATH-
LETIC UNIFORMS, HEADBANDS, [
NECKBANDS, ] SWEATBANDS, [ WRIST-
BANDS, ] BERMUDA SHORTS, BLOUSES,
[ CARDIGANS, FUR COATS, LAB
COATS, ] LEATHER COATS, OVER-
COATS, RAINCOATS, SPORT COATS, [
SUIT COATS, TOP COATS, ] DRESSES, [
DUNGAREES, ] HATS, HEADWEAR,
GYM SHORTS, [ BED JACKETS, FUR

JACKETS, ] LEATHER JACKETS, WIND
RESISTANT JACKETS, JEANS, JOGGING
SUITS, [ JUMPSUITS, ] OVERALLS,
ROBES, SHIRTS, SKIRTS, SUITS, [ GYM
SUITS, [ PLAY SUITS, [ SKI SUITS, ]
SNOW SUITS, SWEAT SUITS, VESTED
SUITS, SWEATERS; FOOTWEAR,
NAMELY, SHOES, SNEAKERS, ATH-
LETIC FOOTWEAR, [ BOOTIES, ] BOOTS,
SANDALS, SLIPPERS; UNDERGAR-
MENTS, NAMELY, BOXER SHORTS,
BRIEFS, UNDERWEAR, HOSIERY, KNEE
HIGHS, SOCKS; BELTS, EARMUFFS,
GLOVES, MITTENS, SCARVES, IN CLASS
25 (U.S. CLS. 22 AND 39).
    FIRST USE 11-0-1996; IN COMMERCE
11-0-1996.

    SER. NO. 75-665,548, FILED 3-22-1999.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on Nov. 13, 2001.*

DIRECTOR OF THE U.S. PATENT AND TRADEMARK OFFICE

Int. Cl.: 25

Prior U.S. Cls.: 22 and 39

United States Patent and Trademark Office

Reg. No. 2,415,190

Registered Dec. 26, 2000

OG Date Nov. 13, 2001

Amended

# TRADEMARK
## PRINCIPAL REGISTER

05

GTFM, INC. (NEW YORK CORPORA-TION)
350 FIFTH AVENUE, SUITE 6617
NEW YORK, NY 10118

FOR: CLOTHING, NAMELY, ATH-LETIC UNIFORMS, HEADBANDS, [NECKBANDS,] SWEATBANDS, [WRIST-BANDS,] BERMUDA SHORTS, BLOUSES, [CARDIGANS, FUR COATS, LAB COATS,] LEATHER COATS, OVERCOATS, RAINCOATS, SPORT COATS, [SUIT COATS, TOP COATS,] DRESSES, [DUN-GAREES,] HATS, HEADWEAR, GYM SHORTS, [BED JACKETS, FUR JACK-ETS,] LEATHER JACKETS, WIND RESIS-TANT JACKETS, JEANS, JOGGING SUITS, [JUMPSUITS,] OVERALLS, ROBES, SHIRTS, SKIRTS, SUITS, [GYM SUITS, PLAY SUITS, SKI SUITS,] SNOW SUITS, SWEAT SUITS, VESTED SUITS, SWEA-TERS; FOOTWEAR, NAMELY, SHOES, SNEAKERS, ATHLETIC FOOTWEAR, [BOOTIES,] BOOTS, SANDALS, SLIPPERS; UNDERGARMENTS, NAMELY, BOXER SHORTS BRIEFS, UNDERWEAR, HOSI-ERY, KNEE HIGHS, SOCKS, BELTS, EARMUFFS, GLOVES, MITTENS, SCARVES, IN CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 11-0-1996; IN COMMERCE 11-0-1996.

SER. NO. 75-665,400, FILED 3-22-1999.

*In testimony whereof I have hereunto set my hand and caused the seal of The Patent and Trademark Office to be affixed on Nov. 13, 2001.*

DIRECTOR OF THE U.S. PATENT AND TRADEMARK OFFICE